IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donald R. Surdak, Jr., ) | C/A No.0:09-3287-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Director Jon Ozmint, *SC Dep't of Corr.*; ) | |
| Richard Bazzle, *Warden*; Lt. Susan Duffy, ) | |
| *Dorm LT*; Sgt. Cotter, *Dorm Sgt.*; Ofc. John ) | |
| Doe, *Dorm Ofcs.*; Jane Doe, *Dorm Ofcs.*; Ofc. ) | |
| NFN Barnes, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Donald R. Surdak, Jr. ("Surdak"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights by the named defendants.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment.  (ECF No. 78.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Surdak of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion.  (ECF No. 79.)  Surdak filed a response in opposition (ECF No. 88) and the defendants filed a reply (ECF No. 92).  Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

---

[1] It appears that Defendants Ofcs. John Doe and Ofcs. Jane Doe were never identified or served with process.  Accordingly, the court recommends that these defendants be dismissed from this action without prejudice.  See Fed. R. Civ. P. 4(m).



## BACKGROUND

The case arises from an assault on Surdak by one or more fellow inmates at Perry Correctional Institution on December 31, 2007. Surdak alleges that on this date, he was playing cards with inmate Lonnie Riddle in the "B-Wing" of the dormitory when inmate Aubrey Tucker approached and verbally threatened him. Surdak stood up and told Tucker to "get out of [his] face" and Tucker responded by pulling out a knife and stabbing Surdak on his left side. Surdak alleges that as Tucker continued to stab him, inmate Kendrick Singleton joined in the fight and stabbed Surdak as well. Surdak contends that officers in the control booth—including Sergeant Daniel Cotter, the officer assigned to the B-Wing—watched the assault yet did nothing to break up the fight until several minutes later. Following the incident, Surdak was transported to Greenville Memorial Hospital where he was treated for his injuries.

Surdak also alleges that, prior to this incident, he had informed Captain Susan Duffy that inmates Tucker and Singleton had been involved in a robbery during which they had used a weapon to force another inmate to give them his walkman and headphones. Surdak claims that Duffy had knowledge of Tucker's and Singleton's behavior yet failed to protect Surdak from being attacked.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible



evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

PJG

B.     **Defendants' Motion for Summary Judgment**

1.     **Failure to Protect**

Surdak's claims, liberally construed, allege that the defendants failed to protect him from the inmate assault in that they did not respond immediately to the incident.  He also alleges that the defendants had knowledge of prior incidents involving these inmates and should have prevented the assault against Surdak from occurring.

To establish a failure to protect claim under the Eighth Amendment to the United States Constitution, an inmate must establish two requirements:  (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the  inmate's health and safety.  Id.  A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk.  Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury).  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id. at 842.  "While the obviousness of a risk is not conclusive and a



prison official may show that the obvious escaped him, . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Id. at 843 n.8. Further, a showing of mere negligence does not suffice to establish deliberate indifference. See id. at 834 (stating that to satisfy the second prong, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety); see also Daniels v. Williams, 474 U.S. 327, 332-34 (1986). Finally, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citations omitted).

The parties agree that Surdak was assaulted by inmates Tucker and Singleton and that Surdak was physically harmed by this attack. Surdak argues that the correctional officers did not timely respond to the assault when it occurred. In support of his argument, Surdak appears to rely on the affidavit testimony of Sergeant Cotter, which incorporates the December 31, 2007 incident report completed by Cotter. (Cotter Aff. ¶ 2, ECF No. 78-2 at 1; see generally Incident Report, ECF No. 78-2 at 3-4.) Specifically, Surdak argues that Sergeant Cotter states in his incident report that he was located in the A-Wing at the time the assault began. Surdak alleges that the B-Wing post "had been deserted and proper security [was] not provided." (Pl.'s Resp. Opp'n Summ. J., ECF No. 88 at 2.) Additionally, Surdak alleges that the officers in the control room, including Captain Duffy and Officer Barnes, watched the assault occur and did not respond to the incident until after Surdak had

been stabbed repeatedly. (Id. at 1; Am. Compl., ECF No. 49-3 at 2; Surdak Aff., ECF No. 49-1 at 1.)

In response, the defendants provide an affidavit of Captain Duffy, who avers that at the time of the incident, she was in the process of locking up another inmate when the call was made to respond to the B-Wing. (Duffy Aff. ¶ 3, ECF No 97-1 at 1.) Duffy also avers that it was Perry Correctional Institution's policy at the time for each dormitory to have one control room officer and one wing officer, and that the wing officer was responsible for making regular rounds on each side of the dormitory. (Duffy Aff. ¶ 4, ECF No. 97-1 at 2.) Sergeant Cotter's incident report which, as stated above, he incorporates in his affidavit, avers that as soon as he was alerted to the assault, he first got on the radio system to notify the dormitory that there was an emergency and then proceeded to break up the fight. (Cotter Aff. ¶ 2, ECF No. 78-2 at 1; Incident Report, ECF No. 78-2 at 3.) Cotter further details the steps he took to restrain inmate Tucker, including spraying Tucker in the face with "Top Cop." (Incident Report, ECF No. 78-2 at 3; Use of Force Report, ECF No. 78-2 at 5.) By contrast, Surdak presents no evidence supporting his assertion that the defendants intentionally delayed responding to the threat to Surdak once they became aware of it. Based upon the record before the court, no reasonable jury could find that the defendants failed to act in a timely manner to Surdak's assault. Therefore, the defendants are entitled to summary judgment on this claim.

Surdak also alleges that prior to this assault, he had informed Captain Susan Duffy of a previous robbery involving inmates Tucker and Singleton during which they had used a weapon to force another inmate to give them his walkman and headphones. However, Surdak makes no allegation that he informed Captain Duffy nor any other officer of any specific threat of harm made

toward him by either Tucker or Singleton. Rather, Captain Duffy avers that she was not aware of any threats made by inmates Tucker and Singleton against Surdak and that she had no prior knowledge that inmates Tucker or Singleton had plans or intentions to assault Surdak. (Duffy Aff. ¶¶ 3-4, ECF No. 78-3 at 2.)

While Surdak appears to argue that the defendants could infer that a substantial risk of serious harm existed to Surdak based on his conversation with Captain Duffy regarding previous acts of violence involving Tucker and Singleton against other inmates, knowledge that an inmate has behaved violently in the past is alone insufficient to establish deliberate indifference; rather, the defendant must know of facts showing a threat specific to the plaintiff. See Fuller v. County of Charleston, 444 F. Supp. 2d 494, 498 (D.S.C. 2006) ("Absent some evidence that prison officials were subjectively aware that this inmate was likely to attack Plaintiff, the mere fact that the attacking inmate was classified as potentially violent cannot constitute deliberate indifference."). Moreover, Surdak cannot demonstrate that an inference of harm to Surdak was in fact drawn or that the risk was obvious. See Farmer, 511 U.S. at 837, 843. Therefore, viewed in the light most favorable to Surdak, the record shows no evidence that the defendants had knowledge of any substantial risk of harm *to Surdak*. Accordingly, Surdak's claims that the defendants violated his Eighth Amendment rights fail as a matter of law.

### 2.  Respondeat Superior

Surdak also raises a claim against Warden Richard Bazzle based only on a general allegation that he was responsible for the supervision and protection of the inmates as well as the operations of the prison. Accordingly, this claim also fails as a matter of law. Similarly, to the extent Surdak's



claims against Defendant Ozmint are based on his former position over the prison system, they fail as a matter of law.

A claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1948 (2009). As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

**3.     Other Claims**

To the extent that Surdak's Complaint may be construed to allege any other constitutional violations, the court finds that Surdak has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). To the extent that Surdak's Complaint could be construed to state any other claims arising under state law, the court should decline to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c).



### C. Surdak's Motion

Also pending before the court is Surdak's motion seeking injunctive relief against several South Carolina Department of Corrections ("SCDC") employees as well as general counsel for SCDC involving their alleged interference with Surdak's attempt to obtain witness statements from other inmates. (ECF No. 115.) Counsel for defendants responded by acknowledging Surdak's difficulties and attempted to resolve the issue by communicating by letter with Surdak and various correctional institutions to facilitate Surdak's efforts under certain guidelines. (ECF No. 120.) The court also granted Surdak additional time in which to obtain inmate witness statements. (ECF No. 124.) Prior to his deadline, Surdak filed a reply in which he stated that he had sent letters to various inmates to obtain witness declarations in accordance with the guidelines established by the court, yet he had not received any responses. (ECF No. 129.) Accordingly, Surdak's motion seeking injunctive relief should be terminated as moot.

### RECOMMENDATION

For the foregoing reasons, the record shows as a matter of law that Surdak is not entitled to the relief he seeks. Accordingly, the court recommends that the defendants' motion for summary judgment be granted (ECF No. 78) and Surdak's motion terminated as moot (ECF No. 115).

*[signature: Paige J. Gossett]*
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 12, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).